UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CAXTON INTERNATIONAL LIMITED,
CAXTON EQUITY GROWTH HOLDINGS, LP,
individually, and derivatively on behalf of the RESERVE
INTERNATIONAL LIQUIDITY FUND, LTD.,

                      Plaintiffs,

- against -

RESERVE INTERNATIONAL LIQUIDITY FUND, LTD.,
RESERVE MANAGEMENT CO., INC.,
RESRV PARTNERS, INC., THE RESERVE FUND, BRUCE
R. BENT, BRUCE R. BENT II, and ARTHUR BENT III

                      Defendants.

**ECF CASE**

09 Civ. 782 (PGG)

OPINION AND ORDER

PAUL G. GARDEPHE, U.S.D.J.:

       Defendants Reserve International Liquidity Fund, Ltd. (the "Fund"), Reserve Management Co., Inc. ("RMCI"), Resrv Partners, Inc., The Reserve Fund (the "Reserve"), Bruce R. Bent, Bruce R. Bent II, and Arthur Bent III's (collectively, "Defendants") move to file under seal certain materials associated with Plaintiffs' remand motion, including reports of the state court-appointed Temporary Supervisor of the Fund and documents containing information or statements from those reports. Defendants also seek to file under seal documents in the remand submissions that disclose the names of current and former Fund investors. (Def. Br. 8–9) Plaintiffs Caxton International Limited and Caxton Equity Growth Holdings, LP oppose Defendants' motion

       For the reasons set forth below, Defendants' motion is GRANTED as to the names of current and former investors, but is otherwise DENIED.

## BACKGROUND

Following the October 6, 2008 filing of this action in state court, Plaintiffs and Defendants executed a Confidentiality Stipulation and [Proposed] Protective Order, dated October 28, 2008 (the "Confidentiality Stipulation").[1]  (Eaton Decl., Ex. A)  On November 6, 2008, the parties stipulated to the appointment of Denis O'Connor of Alix Partners LLP as "Temporary Supervisor" of the Fund, which the state court so-ordered on November 7, 2008 (the "Supervisor Stipulation and Order").  (Id., Ex. B; see Eaton Decl. ¶ 4)  The Supervisor Stipulation and Order required O'Connor to prepare for the state court and the parties a "Preliminary Report" setting forth:

> (A) for the period of September 12, 2008 through the present, verification of (i) all Fund assets . . .; (ii) the number and type of Fund shares held by each investor; (iii) all transfers, involving assets or cash, into or out of any Fund accounts maintained by the [D]efendants; (iv) all purchases or sales of securities by the Fund; (v) all redemption requests received by the Fund including, without limitation, verification of the date and time of each redemption request, and the amount of money returned to Fund shareholders pursuant to each such redemption request; and
>
> (B) [an] examination of the Fund's policies and procedures with respect to redemptions, calculations of the Fund's NAV and the Fund's internal controls.  (Eaton Decl., Ex. B, ¶¶ 2–3)

The Supervisor Stipulation and Order also required O'Connor to provide a weekly report to the Court and parties setting forth:  "(i) the Fund's cash balance; (ii) details of the Fund's assets, and [their] current market value . . .; (iii) the number of shares currently outstanding; and (iv) any other information concerning the management and operations of the Fund, or the status of any

---

[1]  Although Defendants and the state court have referred to the October 28, 2008 Confidentiality Stipulation as a "Confidentiality Stipulation and Protective Order," the "So Ordered" signature line of that document is blank.  (See Eaton Decl., Ex. A, at 11)  Accordingly, this Court will refer to this document as the "Confidentiality Stipulation."

partial distributions of the Fund's cash holdings, that [he] deems appropriate (the 'Weekly Report')." (Id. ¶ 5(C))

The Supervisor Stipulation and Order provides that, "Mr. O'Connor's Weekly Reports to the Court and the parties shall be designated 'Confidential' and shall be subject to the terms of the parties' Confidentiality Stipulation." (Id. ¶ 12)  The Confidentiality Stipulation provides that all material designated as "Confidential" shall be disclosed only to:  the Court; the parties and their outside counsel; other persons involved in the litigation; and outside counsel to investors in the Fund – provided that such counsel execute the Endorsement annexed to the Confidentiality Stipulation – and their clients.  (Eaton Decl., Ex. A, ¶ 7)  The Confidentiality Stipulation further provides that if any party seeks to file with the Court material that has been designated as "Confidential," that party shall request that the material "be held under seal until further order of the Court."  (Id. ¶ 5(e))

Defendants removed this action to this Court on January 27, 2009, and Plaintiffs subsequently moved to remand this action to state court.  In a letter dated February 26, 2009, Plaintiffs alerted this Court to the fact that certain documents relevant to their remand motion had been filed under seal in state court.  (Letter of Mark P. Ressler to Court dated Feb. 26, 2009, at 1–2). Plaintiffs made clear in their letter, however, that they did not believe that these documents contained confidential information and that they had in fact objected to defendants' assertions of confidentiality in state court.  (Id.)  This Court declined to enter a sealing order at that time, finding that it could not make the "specific, on the record findings" necessary to support a sealing order under Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119 (2d Cir. 2006).  (Mar. 19, 2009 Order at 3–4)

3

Defendants now seek an order requiring that the following documents (the "Disputed Materials") be filed under seal: (1) the Temporary Supervisor's Preliminary Report (Hanin Decl. in Supp. of Pltf. Remand Mot. ("Hanin Decl."), Ex. 14); (2) the draft First Amended Complaint (Hanin Decl., Ex. 1; Eaton Decl. in Supp. of Def. Opp. to Remand Mot., Ex. 5) (3) a December 12, 2008 letter from Plaintiffs' counsel to the state court (Hanin Decl., Ex. 15); (4) a January 15, 2009 letter from Plaintiffs' counsel to the state court (Hanin Decl., Ex. 18); and (5) the parties' remand motion papers. (Def. Br. 1 n.1) While Defendants' papers are not entirely clear, it appears that they are seeking a sealing order concerning these documents because they contain information obtained and/or reported by the Temporary Supervisor. (Eaton Decl. ¶¶ 14-15) Defendants also seek to file under seal documents that disclose the names of current and former investors in the Fund. (Id. at ¶ 14; Def. Br. 8–9)

## DISCUSSION

### I. LEGAL STANDARD FOR SEALING

"The common law right of public access is firmly rooted in our nation's history." Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119 (2d Cir. 2006). "The presumption of access is based on the need for federal courts, although independent – indeed, particularly because they are independent – to have a measure of accountability and for the public to have confidence in the administration of justice." Id. (quoting United States v. Amodeo, 71 F.3d 1044, 1048 (2d Cir. 1995)).

The Second Circuit has articulated a three-step process for determining whether documents should be placed under seal. First, a court must determine whether the presumption of access attaches. A presumption of access attaches to any item that constitutes a "judicial document" – i.e., an "item . . . relevant to the performance of the judicial function and useful in

4

the judicial process." Lugosch, 435 F.3d at 119 (quotation omitted).  Second, if the court determines that the item to be sealed is a judicial document, the court must then determine the weight of the presumption of access.  "[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." Id. (quotation omitted).  "Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." Id. (quotation omitted).  Finally, after determining the weight of the presumption of access, the court must "balance competing considerations against it." Id. at 120. (quotation omitted). "Such countervailing factors include but are not limited to the danger of impairing law enforcement or judicial efficiency and the privacy interests of those resisting disclosure." Id. (quotation omitted).

       The Second Circuit has further explained that "[d]ocuments may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." Id. (quoting In re New York Times Co., 828 F.3d 110, 116 (2d Cir. 1987)).  "Broad and general findings by the trial court, however, are not sufficient to justify closure." Id. (quotation omitted).

**II.      LEGAL ANALYSIS**

       Defendants argue that their sealing motion should be granted because (1) Plaintiffs' submission of the Disputed Materials in connection with their remand motion was done in bad faith; (2) Plaintiffs entered into a binding stipulation promising to maintain the Disputed Materials as confidential, and Defendants relied on that stipulation in producing the

5

information in question; and (3) investors' names should be redacted from the Disputed Materials in order to protect their privacy. The Court considers each of these arguments below.

### A. **Plaintiffs' Alleged Bad Faith**

Defendants argue that Plaintiffs attached the Disputed Materials to their remand motion papers in bad faith, that this information is "of absolutely no consequence to Plaintiff's remand motion," and that the Temporary Supervisor's reports are "simply irrelevant" and of "no value" to this Court in resolving Plaintiffs' remand motion. Defendants further claim that Plaintiffs' submission of this material was merely a "tactic designed to avoid [Plaintiffs'] confidentiality obligations under the stipulation." (Def. Br. 8) A review of the Disputed Materials demonstrates, however, that each document is relevant to this Court's determination of Plaintiffs' remand motion.

For example, in their remand motion Plaintiffs argue that their draft amended complaint raises no federal questions and contains no federal issues. (Pltf. Remand Br. 1) Obviously, the draft amended complaint must be examined in considering that argument. Plaintiffs have attached the Temporary Supervisor's Preliminary Report (Hanin Decl., Ex. 14) as an exhibit to their remand motion because this document provides the basis for a number of the allegations set forth in the draft amended complaint. The December 12, 2008 and January 15, 2009 letters from Plaintiffs' counsel to the state court (Hanin Decl., Exs. 15, 18) – and the exhibits thereto – were submitted to demonstrate the state court's in-depth involvement in this case. Finally, there can be no dispute that the remand motion papers themselves are of consequence to this Court's adjudication of whether it has subject matter jurisdiction.

This Court concludes that the Disputed Materials are "judicial documents" because they are "relevant to the performance of the judicial function and useful in the judicial process." Lugosch, 435 F.3d at 119 (quotation omitted). More specifically, these documents are

relevant to resolution of Plaintiffs' remand motion.  Because the Disputed Materials will "directly affect" this Court's adjudication of this case and resolution of Plaintiffs' remand motion, there is a strong presumption of public access to these submissions.  See, e.g., Standard Inv. Chartered, Inc. v. National Ass'n of Sec. Dealers, Inc., No. 07 Civ. 2014 (SWK), 2008 WL 199537, at *16 (S.D.N.Y. Jan. 22, 2008) ("Motion papers are judicial documents and are thus subject to a strong presumption of access under the First Amendment.").  To rebut the strong presumption of access here, Defendants must offer specific facts "demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest."  Id.

Defendants do not explain how the information at issue here satisfies the Lugosch standard, but instead contend that sealing is necessary because Plaintiffs – in entering into the Supervisor Stipulation and Order – waived for all time their right to contend that the information contained in the Temporary Supervisor's reports was not confidential.  (Def. Br. 2; Def. Reply Br. 2)  As discussed below, this is not a reasonable interpretation of the Supervisor Stipulation and Order, because that document is explicitly "subject to the terms of the parties' Confidentiality Stipulation."  (Eaton Decl., Ex. B, ¶ 12)  The Confidentiality Stipulation, in turn, explicitly contemplates the de-designation of documents designated as confidential, and in any event recognizes that "[u]ltimately, the appropriate treatment of Confidential Information will be determined by the presiding trial court."  (Eaton Decl., Ex. A, ¶¶ 10, 13)  Accordingly, in producing the information gathered and reports prepared by the Temporary Supervisor, Defendants could not have had a reasonable expectation that this material would necessarily remain confidential.

B.  Alleged "Binding" Nature of
    **Supervisor Stipulation and Order**

Defendants argue that the Supervisor Stipulation and Order makes confidential for all time any product of the Temporary Supervisor's investigation, including his reports and information derived therefrom. (Def. Br. 5–7) "Absent the confidentiality provisions in the Stipulation," Defendants claim that they "would not have agreed to Mr. O'Connor's appointment and would not have been under any obligation to provide him with the information he has received." (Id. at 6) Defendants argue that sealing will thus "effectuate the parties' intentions" and "preserve the confidentiality that was a precondition for the creation of the reports themselves." (Id.)

"It is 'presumptively unfair for courts to modify protective orders which assure confidentiality and upon which the parties have reasonably relied.'" AT & T Corp. v. Sprint Corp., 407 F.3d 560, 562, (2d Cir. 2005) (quoting S.E.C. v. TheStreet.com, 273 F.2d 222, 230 (2d Cir. 2001)). "Once a court enters a protective order and the parties rely on that order, it cannot be modified 'absent a showing of improvidence in the grant' of the order or 'some extraordinary circumstance or compelling need.'" AT & T Corp., 407 F.3d at 562 (quoting Martindell v. International Tel. & Tel. Corp., 594 F.2d 291, 296 (2d Cir. 1979)).

"On the other hand, some protective orders may not merit a strong presumption against modification." TheStreet.com, 273 F.2d at 230. "For instance, protective orders that are on their face temporary or limited may not justify reliance by the parties[;] [i]ndeed, in such circumstances reliance may be unreasonable." Id. at 230–31 (concluding that, "[w]here a litigant or deponent could not reasonably have relied on the continuation of a protective order a court may properly permit modification of the order."). Thus, "the mere existence of a confidentiality order says nothing about whether complete reliance on the order to avoid disclosure was

8

reasonable." Lugosch, 435 F.3d at 126 (questioning how defendants could "reasonably argue that they produced documents in reliance on the fact that the documents would always be kept secret[,]" given existence of provision stating that "Confidentiality Order shall not prevent anyone from applying to the Court for relief therefrom").

Here, Defendants have not shown that their alleged continued reliance on the Supervisor Stipulation and Order is reasonable. "[T]he Second Circuit has applied the reasonable reliance principle when parties claim reliance on an already existing protective order." Standard Inv. Chartered, Inc. v. National Ass'n of Sec. Dealers, Inc., No. 07 Civ. 2014 (SWK), 2007 WL 2790387, at *13 (S.D.N.Y. Sept. 16, 2007) (emphasis in original) (collecting cases). While the Supervisor Stipulation and Order provides that the Temporary Supervisor's "Weekly Reports . . . shall be designated "Confidential" and shall be subject to the terms of the parties' Confidentiality Stipulation and Protective Order" (Eaton Decl., Ex. B, ¶ 12), no such order was ever entered by the state court or by this Court.

Moreover, the Confidentiality Stipulation does not support Defendants' argument that the Supervisor Stipulation and Order was intended to make confidential for all time the information gathered by and the reports prepared by the Temporary Supervisor. As an initial matter and as noted above, the Supervisor Stipulation and Order was explicitly made subject to the Confidentiality Stipulation. The Confidentiality Stipulation explicitly provides a mechanism to de-designate documents that a party has designated as confidential. While Defendants contend that the de-designation provision of the Confidentiality Stipulation applies only where "any receiving party . . . disagrees with the designation by the Producing Party" (Eaton Decl., Ex. A, ¶ 10), and that the provision does not apply here because "both parties agreed, through the [Supervisor] Stipulation, to designate the Reports as Confidential" (Def. Reply Br. 3–4)

9

(emphasis in original), Defendants' interpretation is not reasonable. The de-designation provision (Eaton Decl., Ex. A, ¶ 10) states that "[i]f, <u>at any time</u> after the designation of Discovery Material as 'Confidential' any receiving party . . . disagrees with the designation by the Producing Party," that disagreement should be brought to the attention of the Producing Party, a meet and confer should take place, and if the dispute cannot be resolved, the matter should be brought to the Court. (emphasis added) As noted above, the Confidentiality Stipulation also explicitly acknowledges that – whatever position the parties take – the Court will make the final determination as to whether a document will remain confidential. (Eaton Decl., Ex. A, ¶ 13) In short, the waiver concept pressed by Defendants is not reflected in the Confidentiality Stipulation and in any event would not be binding on this Court.

Defendants' interpretation of the de-designation provision is also undermined by defense counsel's prior acknowledgement that this provision applies to information obtained and reports prepared by the Temporary Supervisor, and that the confidentiality accorded to that material is of a "preliminary" nature:

> MR. NETZER: . . . [T]here is a mechanism for – if under the order to de-designate confidential material, which Mr. Ressler with respect to some other information has already availed himself of. There are mechanisms in there.
>
> . . .
>
> I think with respect to the temporary supervisor, I believe that the situation has benefitted [sic] from the fact that there is at least preliminary confidentiality. (Pltf. Ltr., Ex. 1 (Nov. 24, 2008 Tr. 65:7-21))

See <u>Allen v. City of New York</u>, 420 F. Supp. 2d 295, 301 (S.D.N.Y. 2006) (reliance would not have been reasonable because protective order permitted plaintiffs to object to confidentiality designation of document produced to them, "thereby triggering an obligation by defendants to move for an order approving the designation").

Although not dispositive of the issue, it is also worth noting that the state court judge who so-ordered the Supervisor Stipulation and Order disagrees with Defendants' interpretation:

> THE COURT: . . . despite your statements, <u>I don't agree that this is an ironclad contract that you can only overturn by fraud.</u> I don't think that is what is going on here.
>
> What I think is that you entered into a stipulation to find a way to work out so that Mr. O'Connor would be appointed and review some of these documents which I think has been helpful and has led up to this imminent partial distribution.
>
> We did mark them – we did say that his weekly reports would be designated confidential, and as Mr. Ressler points out, it says in paragraph 12: It shall be subject to the terms of the parties' confidentiality stipulation and protective order.
>
> <u>So it makes reference to the other document and that document makes provisions on how it would be possible to ask for a lifting of the confidentiality.</u> (Pltf. Ltr., Ex. 2 (Jan. 16, 2009 Tr. 56:14-57:8) (emphasis added))

In sum, the Supervisor Stipulation and Order does not grant permanent confidentiality to all information obtained by and reports prepared by the Temporary Supervisor, and any alleged expectation by Defendants that these materials would remain permanently confidential is not reasonable.[2]

### C. Investor Names Should Remain Confidential

Defendants contend that the Confidentiality Stipulation requires that investor names be maintained as confidential. (Def Br. at 8–9) Plaintiffs do not address this argument in

---

[2] Defendants also argue that the public filing of Disputed Materials would constitute an "end-run" around the "mandatory stay of discovery" under the Private Securities Litigation Reform Act ("PSLRA") because it would enable "numerous securities plaintiffs who have sued Defendants [to] gain access to discovery to which they are not entitled under the PSLRA's mandatory stay of discovery." (Def. Br. 7) Defendants cite no law in support of this argument, and it misconstrues the inquiry before this Court. Because the Disputed Materials are relevant to Plaintiffs' remand motion, the issue is whether Defendants have met their heavy burden under <u>Lugosch</u> to demonstrate that public access to these materials should be denied.

11

their opposition, but have previously stated that "the names of investors . . . in [their] amended complaint . . . [a]rguably . . . should remain confidential because they're investors in a fund" and "haven't been accused of anything." (Netzer Decl., Ex. 1 (Jan. 16, 2009 Tr. 60:7-14))

Under the Confidentiality Stipulation, "Confidential Information" includes "information reflecting the identity of actual or potential investors." (Eaton Decl., Ex. A, ¶ 3) In similar circumstances, courts in this District have allowed parties to file under seal documents containing such identifying information. See Professional Sound Servs., Inc., No. 02 Civ. 8428 (DC), 2003 WL 22097500, at *1 (S.D.N.Y. Sept. 10, 2003) (permitting plaintiff to file first amended complaint under seal "to keep confidential the names of certain customers" and thereafter filing redacted version, "deleting the names of [plaintiff's] allegedly lost customers"); Druck Corp. v. The Macro Fund (U.S.) Ltd., No. 02 Civ. 6163 (AGS) (DFE), 2002 WL 31415699, at *1 (S.D.N.Y. Oct. 28, 2002) (directing parties to file motion papers under seal – "to the extent they identify any non-party investor" – and file copies "in the public court files with the minimum amount of deletions necessary to protect the identity of the non-party investors").

Because there is no evidence that the identities of investors "directly affect the adjudication" of whether subject matter jurisdiction exists over this action, Lugosch, 435 F.3d at 119 (quotation omitted), the parties are directed to file their motion papers under seal and then, to the extent those papers identify any non-party investor, file copies in the public court files with the minimum amount of redactions necessary to protect the identity of non-party investors.

## **CONCLUSION**

For the reasons stated above, Defendants' motion to file under seal is GRANTED as to the names of current and former investors, but is otherwise DENIED.

Accordingly, it is hereby ORDERED that:

(1) The parties' unredacted remand motion papers shall be filed in the Clerk's Office and placed under seal;

(2) Only this Court and counsel of record shall have access to the parties' unredacted remand motion papers;

(3) Plaintiffs shall serve this Court and counsel of record with copies of their unredacted reply papers on their remand motion; and

(4) The parties shall electronically file redacted versions of their remand motion papers with the minimum amount of redactions necessary to protect the identity of non-party current and former investors in the Reserve International Liquidity Fund.

The Clerk of the Court is directed to terminate Defendants' sealing motion (Docket No. 11).

Dated: New York, New York
July 30, 2009

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge

13