UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re THE RESERVE FUND SECURITIES AND DERIVATIVE LITIGATION | 09 MD. 2011 (PGG)<br><br>**MEMORANDUM OPINION AND ORDER** |
| CAXTON INTERNATIONAL LIMITED, CAXTON EQUITY GROWTH HOLDINGS, LP, individually, and derivatively on behalf of the RESERVE INTERNATIONAL LIQUIDITY FUND, LTD.,<br><br>Plaintiffs,<br><br>- against -<br><br>RESERVE INTERNATIONAL LIQUIDITY FUND, LTD., RESERVE MANAGEMENT CO., INC., RESRV PARTNERS, INC., THE RESERVE FUND, BRUCE R. BENT, BRUCE R. BENT II, and ARTHUR BENT III,<br><br>Defendants. | 09 Civ. 782 (PGG) |
| VERISIGN SARL, and VERISIGN SWITZERLAND S.A.,<br><br>Plaintiffs,<br><br>- against -<br><br>RESERVE INTERNATIONAL LIQUIDITY FUND LTD., and RESERVE MANAGEMENT COMPANY, INC.,<br><br>Defendants. | 09 Civ. 3786 (PGG) |

PAUL G. GARDEPHE, U.S.D.J.:

        The two above-captioned cases (09-cv-782, 09-cv-3786) arise from the collapse of the Reserve International Liquidity Fund (the "International Fund"), an offshore money market fund organized as a limited liability company under the British Virgin Islands Business Companies Act of 2004. In September 2008, the International

Fund held approximately $125 million in Lehman Bros. Holdings, Inc. debt securities. After Lehman announced on September 14, 2008 that it would file a petition for bankruptcy protection the following day, a run on the International Fund ensued. On September 17, 2008, the International Fund announced that it had "broken the buck" – i.e., its per-share net asset value ("NAV") had fallen below $0.995 at approximately 5:00 p.m. on September 16, 2008. The International Fund also announced that only redemption requests received before 3:00 p.m. on September 16 would be processed at an NAV of $1.00 per share. Going forward, the International Fund's NAV would be calculated at the close of business of each day. Although redemption requests submitted as early as September 15 had not been paid, the International Fund officially suspended redemptions as of September 22, 2008. The drop in the NAV of the Fund and the suspension of redemptions led to this litigation.

Plaintiffs Caxton International Limited and Caxton Equity Growth Holdings, LP's (together, "Caxton") are investment funds, each with its principal place of business in Bermuda. (Hanin Decl. Ex. 1 ¶¶ 12–13) Caxton International is a British Virgin Islands corporation, and Caxton Equity is a Bermuda Limited Partnership. (Hanin Decl. Ex. 1 ¶¶ 12–13) Plaintiffs Verisign Sarl and Verisign Switzerland, S.A. (together, "Verisign") are Swiss corporations, each with its principal place of business in Switzerland. (Verisign Notice of Removal, Ex. A ¶¶ 5–6)

Both the Caxton and Verisign actions name as defendants the International Fund and the Reserve Management Company, Inc. ("RMCI") – a New Jersey corporation with its principal place of business in New York – which serves as an investment advisor to the International Fund. (Defendant's Memorandum of Law in Opposition to Caxton's

Motion to Remand[1] at 3; Hanin Decl. Ex. 1 ¶¶ 14–15; Defendant's Memorandum of Law in Opposition to Verisign Sarl and Verisign Switzerland S.A.'s Motion to Remand[2] at 2; Verisign Notice of Removal, Ex. A ¶¶ 7–8)  Caxton also names the following as defendants:  Resrv Partners, Inc. ("Resrv"), a New York corporation with its principal place of business in New York, which distributes International Fund shares; the Reserve Fund, a Massachusetts business trust with its principal office in New York, which Caxton alleges "was affiliated with" the International Fund (Hanin Decl. Ex. 1 ¶ 20); and New York residents Bruce R. Bent ("Bent"), Bruce R. Bent II ("Bent II"), and Arthur Bent III ("Arthur Bent") (collectively, the "Bent Defendants"), who comprise the International Fund's Board of Directors.  (Hanin Decl. Ex. 1 ¶¶ 14, 29)

Caxton filed suit in New York State Supreme Court, New York County, on October 6, 2008, and on January 9, 2009, Caxton provided the named defendants with a copy of a draft amended complaint containing twenty-two causes of action, including: a direct claim for breach of contract (Count 1) against the International Fund; direct claims for breach of contract (Counts 2, 4) and breach of fiduciary duty (Count 8) against RMCI and the Bent Defendants; a derivative claim for breach of contract (Count 3) against RMCI and the Bent Defendants; and a direct claim for rescission and damages (Count 19) against the International Fund and the Bent Defendants, jointly and severally. (Hanin Decl. Ex. 1 ¶¶ 105–129, 145–150, 210–216)

On March 23, 2009, Verisign brought suit in New York State Supreme Court, New York County, against the International Fund and RMCI.  Verisign's complaint raises claims for breach of contract (Count 1) and declaratory relief (Count 2)

---

[1] Hereinafter "Caxton Def. Opp. Br."
[2] Hereinafter "Verisign Def. Opp. Br."

against the International Fund, and claims for breach of fiduciary duty (Count 3) and breach of contract (Count 4) against RMCI.  (Verisign Notice of Removal, Ex. A ¶¶ 23–37)

Defendants in both cases subsequently filed notices of removal pursuant to 28 U.S.C. §§ 1331 and 1441.  These cases have been assigned to this Court pursuant to an order of the Judicial Panel on Multi-District Litigation.

Plaintiffs moved to remand the above-captioned actions to state court pursuant to 28 U.S.C. § 1447.  On August 3, 2009, this Court heard oral argument concerning these motions.  Based on the parties' written submissions and oral argument, and for the reasons stated below, Plaintiffs' motions to remand will be granted.  Plaintiffs' motions for attorneys' fees, however, will be denied.

**I.      DEFENDANTS HAVE NOT IDENTIFIED
         A BASIS FOR FEDERAL JURISDICTION**

Federal courts have jurisdiction over actions "arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  A case arises under federal law where "'a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'"[3]  Empire Healthchoice Assur., Inc. v. McVeigh, 547 U.S. 677, 689-90 (2006) (quoting Franchise Tax Bd. Of Cal. v. Constr. Laborers Vacation Trust for Southern Cal., 463 U.S. 1, 27-28 (1983)).

---

[3]  Caxton argues that removal on the basis of its draft amended complaint, which had yet to be filed, was premature.  (Caxton Def. Opp. Br. 19-21)  The Court does not reach this issue, in light of its finding that the draft amended complaint does not raise substantial and disputed federal issues, and thus remand is appropriate regardless of whether removal was premature.

4

Under the well-pleaded complaint rule, a plaintiff is "free to avoid federal jurisdiction by pleading only state claims even where a federal claim is also available." Marcus v. AT&T Corp., 138 F.3d 46, 52 (2d Cir. 1998). Plaintiffs are limited only by the artful pleading doctrine – "an independent corollary" of the well-pleaded complaint rule – which prevents a plaintiff from defeating federal jurisdiction by "omitting to plead necessary federal questions in a complaint." Franchise Tax Bd. Of Cal., 463 U.S. at 22. Federal jurisdiction may not be premised on the assertion of a federal defense, "even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is [essential to adjudication of the claims]." Id. at 14.

Courts assessing grounds for removal "'must make principled, pragmatic decisions, engaging in a selective process which picks the substantial causes out of the web and lays the other ones aside.'" Fin. and Trading, Ltd. v. Rhodia S.A., No. 04 Civ. 6083 (MBM), 2004 U.S. Dist. LEXIS 24148, 2004 WL 2754862, at *6 (S.D.N.Y. Nov. 30, 2004) (quoting Barbara v. New York Stock Exch., Inc., 99 F.3d 49, 54 (2d Cir. 1996)).

In developing a standard for assessing whether a plaintiff's state law claim "necessarily depends on resolution of a substantial question of federal law," Empire Healthchoice Assur., Inc., 547 U.S. at 689-90, the Supreme Court has held that courts must determine whether the claim "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005).

Grable creates only a "special and small . . . [and] slim category" of cases that may be appropriately removed to federal court. Empire Healthchoice Assur., Inc., 547 U.S. at 701. Indeed, the "mere presence" of a federal issue does not create federal jurisdiction over a state claim. Ins. Corp. of New York v. Monroe Bus Corp., 491 F. Supp. 2d 430, 434 (S.D.N.Y. 2007) (citing Merrell Dow Pharms. Inc. v. Thompson, 478 U.S. 804, 808, 813-14 (1986)). Nor is the assertion of a federal interest enough to warrant the exercise of federal jurisdiction. Empire Healthchoice Assur., Inc., 547 U.S. at 701.

Defendants – as the parties seeking to preserve removal – have the burden of proving that federal jurisdiction exists. See Pan Atl. Group v. Republic Ins. Co., 878 F. Supp. 630, 638 (S.D.N.Y. 1995). The Second Circuit has held that courts must "'construe the removal statute narrowly, resolving any doubts against removability.'" Lupo v. Human Affairs Int'l, 28 F.3d 269, 274 (2d Cir. 1994) (quoting Somlyo v. J. Lu-Rob Enters., Inc., 932 F.2d 1043, 1045-46 (2d Cir. 1991)).

Here, Plaintiffs have asserted a variety of state law claims, including claims for breach of contract (Hanin Decl. Ex. 1 at 33-41; Verisign Notice of Removal, Ex. A ¶¶ 23–26, 34-37) and breach of fiduciary duty (Hanin Decl. Ex. 1 at 44-56; Verisign Notice of Removal, Ex. A ¶¶ 30-33). Defendants argue that these claims raise substantial and disputed issues of federal law.[4] (Caxton Def. Opp. Br. 11-16; Verisign Def. Opp. Br. 7-10)

---

[4] The Notice of Removal in the Verisign action sets forth several additional grounds on which removal might be predicated, including diversity jurisdiction and relation to In re Lehman Brothers Holdings, Inc., Case No. 08-13555 (JMP), a bankruptcy case currently pending in U.S. Bankruptcy Court in this district. (Verisign Notice of Removal, ¶¶ 6-7) Defendants did not pursue these arguments in their submissions to this Court or at oral

### A. Caxton's Breach of Contract and Breach of Fiduciary Duty Claims Do Not Raise Substantial and Disputed Issues of Federal Law

Caxton asserts state law claims for breach of contract and breach of fiduciary duty. Caxton's breach of contract claims rely on rights created by the International Fund's Offering Memorandum, which Caxton contends constitutes a contract between investors and the International Fund. (Caxton Def. Opp. Br. 12-13) Each of Caxton's four claims for breach of contract alleges sixteen or more predicate facts upon which a breach might be found. (Hanin Decl. Ex. 1 at 33-41) Within each claim, only one of the numerous alleged predicate facts refers to federal law. In that allegation, Caxton claims that Defendants committed a breach by failing "to manage the Fund in accordance with Regulation 2a-7 of the 1940 Act, as required by the Contract." (Hanin Decl. Ex. 1 at 33-41) Defendants argue that these references to Regulation 2a-7 are sufficient to state a substantial and disputed federal issue (Caxton Def. Opp. Br. 11-15), as required for the exercise of federal jurisdiction under Grable. See 545 U.S. at 314.

Caxton's draft amended complaint also contains eight causes of action involving breach of fiduciary duty and aiding and abetting breach of fiduciary duty. (Hanin Decl. Ex. 1 at 44-56) Of these, only the Eighth Cause of Action, which sets forth a breach of fiduciary duty claim against RMCI and the Bent Defendants, makes any reference to federal law. (Hanin Decl. Ex. 1 at 46) The pertinent language in the Eighth Cause of Action alleges that RMCI and the Bent Defendants

---

argument, however, see (Verisign Def. Opp. Br. 7-11; Aug. 3 Oral Arg. Tr. at 33-39), and proceeded exclusively on the theory that Verisign's complaint raises a federal cause of action. See Aug. 3 Oral Arg. Tr. at 33-39.

7

> owed plaintiffs a duty of care and loyalty, and a duty not to waste Fund assets, as managers of, and advisers with respect to, plaintiffs' investments in the Fund. The Adviser and the Bent Defendants also owed plaintiffs a duty of care pursuant to Rule 2a-7 of the 1940 Act, which the Adviser and Bent defendants agreed to comply with in the Contract.

(Hanin Decl. Ex. 1 at 46) Defendants argue that this claim requires a determination as to whether or not RMCI and the Bent Defendants owed a duty of care to Caxton under Rule 2a-7 and, if they did, what that duty entailed. (Caxton Def. Opp. Br. 15-16) They further argue that determination of these issues necessarily raises an issue of federal law. (Id. at 16)

Caxton's right to relief on its breach of contract and breach of fiduciary duty claims, however, does not "necessarily depend[] on resolution of a substantial question of federal law.'" See Empire Healthchoice, 547 U.S. at 689-90 (quoting Franchise Tax Bd. Of Cal., 463 U.S. at 27-28). Courts in this Circuit have made clear that the exercise of federal jurisdiction is inappropriate where "no cause of action . . . necessarily stands or falls based on a particular interpretation or application of federal law." Sung v. Wasserstein et al, 415 F. Supp. 2d 393, 406 (S.D.N.Y. 2006); see also Caggiano v. Pfizer, Inc. et al, 384 F. Supp. 2d 689, 689-90 (S.D.N.Y. 2005); New York v. Dell, Inc., 514 F. Supp. 2d 397, 400-01 (N.D.N.Y. 2007). In Caggiano, for example, the complaint alleged "classic state-law claims . . . peppered with allegations that the defendants violated various federal statutes and regulations." 384 F. Supp. 2d at 690. These allegations, however, were insufficient to confer federal jurisdiction, because "a jury could find defendants liable on each and every one of the eight claims without being required to determine whether any federal law had been violated." Id. Similarly, in Dell,

the court held that removal was inappropriate where federal causes of action "are merely alternate theories for Petitioner's state law claims." 514 F. Supp. 2d at 400.

With regard to its breach of contract claim, Caxton lists many "alternate theories" upon which a finding of breach could be premised; only one of these is related to federal law. See Hanin Decl. Ex. 1 at 33-41. Rule 2a-7 of the Investment Company Act is invoked in this context as "merely [an] alternate theor[y]." See Dell, 514 F. Supp. 2d at 400. A jury could find for Caxton on its breach of contract claims on any of the additional 15 or 16 grounds asserted in the complaint, without ever looking to federal law. As a result, Caxton's breach of contract claims do not present a federal issue, as is required for removal. See Grable, 545 U.S. at 314.

Similarly, with regard to Caxton's breach of fiduciary duty claim, the invocation of federal law merely provides an alternate ground upon which liability might be premised. The draft amended complaint contends that RMCI and the Bent Defendants owe a "duty of care and loyalty, and a duty not to waste Fund assets" (Hanin Decl. Ex. 1 at 46), and further alleges that RMCI and the Bent Defendants "also owed plaintiffs a duty of care pursuant to Rule 2a-7 of the 1940 Act, which the Adviser and Bent defendants agreed to comply with in the Contract." (Hanin Decl. Ex. 1 at 46) (emphasis added). Defendants mischaracterize this section of the draft amended complaint in their brief, omitting the duties outlined before the mention of the federal provisions. See Caxton Def. Opp. Br. 15. A jury could find for Caxton on the breach of fiduciary duty claim on the basis of the other duties alleged, without ever reaching the requirements of Rule2a-7. Accordingly, Caxton's breach of fiduciary duty claim does not present a federal issue. See Grable, 545 U.S. at 314.

Defendants rely heavily on Broder v. Cablevision Systems Corporation, 418 F.3d 187 (2d Cir. 2005). (Caxton Def. Opp. Br. 11-15) Broder involved a breach of contract claim made against a cable company in state court, followed by a removal to federal court. 418 F.3d at 194-95. The Second Circuit affirmed the district court's denial of plaintiff's motion to remand, finding that what appeared on its face to be a single breach of contract claim was actually two separate claims, including one for a violation of federal law. Id. at 195. In making this determination, the Second Circuit noted that the plaintiff sought a declaratory judgment that the defendant had violated federal law. Id. at 195. The Court held that this separate claim raised a stated federal issue and that the issue was "actually disputed and substantial" insofar as it involved "aspects of the complex federal regulatory scheme applicable to cable television rates, as to which there is 'a serious federal interest in claiming the advantages thought to be inherent in a federal forum.'" Id. (quoting Grable, 545 U.S. at 313).

Defendants in this case – unlike the defendants in Broder – have not demonstrated that Caxton's state law claims contain distinct allegations of federal law violations. The references to federal law in the draft amended complaint merely provide one of many grounds upon which a jury could find for Caxton on its breach of contract and breach of fiduciary duty claims. Defendants contend that Caxton's request for relief, which includes a request that the court "enjoin defendants from committing any further breaches of their fiduciary and contractual duties to plaintiffs and the Fund" (Hanin Decl. Ex. 1 at 65), depends on a determination as to whether Defendants violated Rule 2a-7. (Caxton Def. Opp. Br. 13) This is simply not the case. A court could enjoin Defendants from further breaches of contractual and fiduciary duties based on findings that they had

engaged in past breaches of duties owed under state law, as outlined in the other grounds set forth in Caxton's draft amended complaint. In doing so, a court would not need to look to Rule 2a-7 in order to enter the requested relief. This case is thus distinguishable from Broder where the requested relief – a declaratory judgment that the defendant had violated a specific federal law – necessitated an inquiry into federal issues. See 418 F.3d at 195.

Even assuming arguendo that Caxton's state law claims necessarily raise "a stated federal issue" – which they do not – the potential federal issue would not be "substantial." See Grable, 545 U.S. at 314. The International Fund, the operations of which are at the heart of this proceeding, is incorporated under the laws of the British Virgin Islands. (Hanin Decl. Ex. 2 at 1) In the Offering Memorandum, the International Fund expressly disclaims obligations under U.S. law, including specifically the Investment Company Act.[5] (Hanin Decl. Ex. 2 at 14) Indeed, Rule 2a-7 is never explicitly referenced in the Offering Memorandum, see Hanin Decl. Ex. 2, although the International Fund chose to mirror the language of the federal regulation in portions of the Offering Memorandum. (Aug. 3 Oral Arg. Tr. at 47)

At most, then, Rule 2a-7 would provide a standard of care that might be used to assess whether Defendants breached their contractual or fiduciary duties. That federal law might serve to provide a standard of care for a state law claim, however, is an insufficient foundation for the exercise of federal jurisdiction. See, e.g., Firefighters' Ret.

---

[5] The Offering Memorandum states that "the Fund is not registered and does not intend to be registered as an investment company under the 1940 Act, pursuant to an exception from the definition of an investment company under the 1940 Act. [A]s a result, the Fund will not be subject to the requirements applicable to registered investment companies under the 1940 Act, and shareholders will not benefit from the investor protections of the 1933 Act and the 1940 Act." (Hanin Decl. Ex. 2 at 14)

11

Sys. v. Regions Bank, 598 F. Supp. 2d 785, 798-99 (M.D. La. 2008); Elmira Teachers' Ass'n v. Elmira City Sch. Dist., No. 05-cv-6513 (CJS), 2006 WL 240552, at *6 (N.D.N.Y. Jan. 27, 2006); Kurz v. Fidelity Mgmt. & Research Co., No. 07-cv-7090 (JPG), 2007 WL 3231423, at *4 (S.D. Ill. Oct. 30, 2007); Connolly v. Union Pacific R.R. Co., et al., 453 F. Supp. 2d 1104, 1109-10 (E.D. Mo. 2006). For example, in Connolly, the court held that though federal regulation and other authorities "provide[d] a reference as a means of creating a duty" and served "as a standard upon which to measure" state law violations, removal to federal court was inappropriate. 453 F. Supp. 2d at 1109-10.

    Firefighters' Retirement System is also instructive on this issue. There, fund investors alleged breach of contract, among other claims, after the fund failed to comply with the terms of an investment management agreement. Firefighters' Ret. Sys., 598 F. Supp. 2d at 788-89. The court held that while some of the allegations concerned "the requirements for a prospectus" and thus might "call upon federal law for guidance as to the applicable standards," those allegations were insufficient to confer federal jurisdiction. Id. at 798-99. Here, as in Firefighters' Retirement System, even if federal law might provide guidance in adjudicating Caxton's claims, that is not a sufficient basis on which to exercise federal jurisdiction.

    Defendants attempt to distinguish these cases by arguing that they involved contracts which did not expressly incorporate federal law, while here, according to Defendants, they "are expressly accused of violating Rule2a-7 and resolution of Caxton's claims necessarily requires a court to construe Rule 2a-7 and to evaluate the scope of Defendants' duties thereunder." (Caxton Def. Opp. Br. 17-18)  In reality, however, Caxton accuses Defendants of breaching the terms of the Offering

12

Memorandum and various fiduciary duties. Although Caxton's numerous allegations include a reference to Rule 2a-7 – to the extent its provisions were voluntarily adopted in the Offering Memorandum – it is hardly the case that this federal regulation is central to the Caxton complaint. Instead, it is, at most, merely a standard of care which could serve as one ground among many on which state law claims might be founded.

Defendants also cite <u>D'Alessio v. New York Stock Exchange</u>, 258 F.3d 93 (2d Cir. 2001), in support of their argument that the potential federal issue in Caxton's draft amended complaint is substantial. (<u>Caxton</u> Def. Opp. Br. 17) <u>D'Alessio</u> involved an action by a securities broker against the New York Stock Exchange for tort claims arising from the broker's suspension. 258 F.3d at 97-98. There, the court held that the "central premise" of the complaint was that the New York Stock Exchange had conspired to violate federal securities laws and had intentionally misinterpreted those laws in punishing the plaintiff. <u>D'Alessio</u>, 258 F.3d at 102. No such claim could be made about the complaint filed by Caxton. The draft amended complaint lists many grounds upon which a jury could find for Caxton as to the alleged breaches of contract and fiduciary duty. That a federal regulation – the terms of which were voluntarily referenced by Defendants in a contract that expressly disclaims governance by U.S. law – might provide the standard of care for one such ground does not make federal law the "central premise" of Caxton's complaint.

Defendants also argue that the federal issue potentially raised by Caxton's complaint is substantial because

> [t]he 1940 Act sets forth a complex federal regulatory scheme which regulates the organization of companies, including mutual funds, that engage primarily in investing, reinvesting, and trading in securities, and whose own securities are offered to the investing public. 15 U.S.C. §§

13

>
> 80a-1-a-64.  Rule 2a-7, in particular, sets forth a complex series of rules dictating the rights and duties of all money market funds.  17 C.F.R. § 270.2a-7.  Notably, the SEC has an entire division – the Division of Investment Management – devoted to monitoring and enforcing compliance with the 1940 Act.

(Caxton Def. Opp. Br. 16)  Defendants then point to Broder, in which the Second Circuit found that allegations involving federal law were substantial in that they involved "aspects of the complex federal regulatory scheme applicable to cable television rates, as to which there is 'a serious federal interest in claiming the advantages thought to be inherent in a federal forum.'"  Id. (quoting Grable, 545 U.S. at 313).

The "complex federal regulatory scheme" at issue in Broder, however, is not analogous to the securities arena, in which Congress envisioned both federal and state courts adjudicating claims.  See Rhodia S.A., 2004 U.S. Dist. LEXIS 24148, 2004 WL 2754862, at *5 (citing Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 383 (1996)).  As the Supreme Court wrote in Matsushita, "Congress plainly contemplated the possibility of dual litigation in state and federal courts relating to securities transactions."  516 U.S. at 383.  Moreover, the fact that a state law claim may affect an important federal interest is not sufficient grounds upon which to base federal jurisdiction.  Empire Healthchoice Assur., Inc., 547 U.S. at 701 (acknowledging that the United States has an "overwhelming interest" in the health and welfare of federal workers but holding that "those interests . . . do not warrant turning into a discrete and costly 'federal case' an insurer's contract-derived claim to be reimbursed from the proceeds of a federal worker's state-court-initiated tort litigation")

Caxton's draft amended complaint does not "necessarily raise a stated federal issue."  Assuming arguendo that Caxton's complaint did raise such an issue, it

would not be "substantial," and thus removal would, even under those circumstances, be inappropriate. See Grable, 545 U.S. at 314.

   **B.** **Verisign's Breach of Contract and Breach of Fiduciary Duty Claims Do Not Raise Substantial and Disputed Issues of Federal Law**

   Verisign also asserts state law claims for breach of contract and breach of fiduciary duty. Its complaint does not make any reference to federal law and raises exclusively state law claims. (Verisign Notice of Removal, Ex. A) Defendants argue, however, that Verisign's claims for breach of contract and fiduciary duty necessarily depend upon Rule 2a-7 and Rule 22c-1 of the Investment Company Act[6] (Verisign Def. Opp. Br. 6-7), and that accordingly Verisign has violated the artful pleading doctrine by "omitting to plead necessary federal questions in a complaint." See Franchise Tax Bd. Of Cal., 463 U.S. at 22. The Court concludes that the Verisign complaint does not omit necessary federal questions, nor does it necessarily raise stated federal issues. Accordingly, it must be remanded to state court. See Grable, 545 U.S. at 314; Franchise Tax Bd. Of Cal., 463 U.S. at 22.

   Defendants argue that Verisign's breach of fiduciary duty claims can only be based on duties arising under Rule 2a-7. (Verisign Def. Opp. Br. 7) The duties upon which Verisign bases its claims, however, need not be federal in nature. Indeed, as Verisign notes, New York law creates fiduciary duties based on the relationship between parties. (Verisign Br. 3) (citing Kurtzman v. Bergstol, 40 A.D.3d 588, 835 N.Y.S. 2d 644 (2d Dept. 2007) (setting forth the elements of a breach of fiduciary duty claim under New

---

[6] Defendants cite Rule 22c-1 in their Notice of Removal (Verisign Notice of Removal, ¶ 5b) and make one reference to Rule 22c-1 in their opposition brief, but only to note that Verisign is "wrong" in deeming it "entirely irrelevant." (Verisign Def. Opp. Br. 6) Defendants never pursue this argument, nor do they explain why Rule22c-1 is necessarily raised by Verisign's claims. See Verisign Def. Opp. Br. 4-10.

15

York law)). State law similarly governs breaches of contract. See Hecht v. Components Intl, Inc., 22 Misc. 3d 360, 364 (N.Y. Sup. Ct. 2008) (setting forth the elements of a breach of contract claim under New York law). Defendants do not contest this black letter law, but instead argue that Verisign's claims rest on "the propriety of [their] actions, as prescribed under federal law." (Verisign Def. Opp. Br. 7) (citations omitted)

Verisign's contract claims rest on alleged breaches of specific commitments made in the Offering Memorandum – in which the International Fund disclaimed any application of federal law – not on any violations of federal law. See (Verisign Notice of Removal, Ex. A at 7, 9). Similarly, Verisign's fiduciary duty claims rest on state law duties of loyalty and good faith. (Id. at 8) Verisign, thus, could prevail on either claim even if Rule 2a-7 were ignored. Because Verisign's claims "stand independently on state common law grounds," Rhodia S.A., 2004 U.S. Dist. LEXIS 24148, 2004 WL 2754862, at *7, its complaint does not present a federal issue.

Even if Verisign's claims required interpretation of Rule 2a-7, a "substantial" federal issue would not exist according to the standard set in Grable. See 545 U.S. at 314. The analysis as to whether Verisign's claims present substantial federal issues is identical to the analysis set forth above in connection with Caxton's claims. As noted earlier, the International Fund is a British Virgin Islands corporation which expressly disclaimed application of U.S. law in its Offering Memorandum. (Novomisle Decl. Ex. 2 at 1, 14) Any reference to federal law would serve to provide only a standard of care that might guide adjudication of state law claims. See supra 11-13. Finally, the securities regulation invoked by Defendants here is simply not the kind of complex regulatory scheme upon which federal jurisdiction may be grounded, and a strong federal

16

interest is not – standing alone – sufficient to justify removal under Grabel and Empire Healthchoice.  See supra 13-14.

For the reasons set forth above, Verisign's complaint, like Caxton's, does not "necessarily raise a stated federal issue" and remand is required.  See Grable, 545 U.S. at 314.

## II.     PLAINTIFFS ARE NOT ENTITLED TO ATTORNEYS' FEES

Caxton and Verisign request awards of attorneys' fees for the expenses they incurred as a result of removal.  (Caxton Br. 22-24; Verisign Br. 2)  The decision to grant attorneys' fees "requires application of a test of overall fairness given the nature of the case, the circumstances of the remand, and the effect on the parties."  Morgan Guar. Trust Co. v. Republic of Palau, 971 F.2d 917, 924 (2d Cir. 1992).  As courts in this Circuit have acknowledged "in declining to grant costs in . . . case[s] involving artful pleading, '[t]his area of the law is extremely complicated and the related jurisdictional issues are difficult to navigate.'"  Rhodia S.A., 2004 U.S. Dist. LEXIS 24148, 2004 WL 2754862, at *8 (quoting Foschi v. United States Swimming, Inc., 916 F. Supp. 232, 242 (E.D.N.Y. 1996)).  Here, Defendants had a colorable basis for removal.  Accordingly, Plaintiffs' request for attorneys' fees will be denied.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' motions to remand the Caxton and Verisign actions to state court are GRANTED, and Plaintiffs' motions for attorneys' fees are DENIED.

Accordingly, the Clerk of the Court is directed to terminate the following motions: 09 Civ. 782 – Docket No. 47 and 09 Civ. 3786 – Docket No. 14. The Clerk of the Court is further directed to close both of the above-captioned cases and return these matters to the Clerk of the Supreme Court for the State of New York, New York County.

Dated: New York, New York
       November 3, 2009

                                        SO ORDERED.

                                        *Paul G. Gardephe* (signature)
                                        Paul G. Gardephe
                                        United States District Judge